UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

DAVID OBAL,

                    Plaintiff,              14 Civ. 2463

   -against-                           OPINION

DEUTSCHE BANK NATIONAL TRUST COMPANY AS
TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN
TRUST 2004-9, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2004-9; MORGAN STANLEY
MORTGAGE LOAN TRUST 2004-9, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2004-9;
THE CERTIFICATEHOLDERS OF MORGAN STANLEY
MORTGAGE LOAN TRUST 2004-9, MORTGAGE
PASS-THROUGH CERTIFICATES, SERIES 2004-9;
MORGAN STANLEY CAPITAL 1, INC.; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.;
ROES 1-10 AND DOES 1-10, inclusive,
representing a class of unknown persons who
claim or have the right to claim an interest
in certain real property located in
Henderson, Nevada,



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/13/15

                    Defendants.
------------------------------------------------X

A P P E A R A N C E S:

        **Pro Se**

        DAVID OBAL
        405 Groft Way
        Henderson, NV 89015

        **Attorneys for Defendants**

        HOGAN LOVELLS US LLP
        875 Third Avenue
        New York, NY 10022
        By:  Lisa J. Fried, Esq.
             Adam R. Feeney, Esq.

**Sweet, D.J.**

Defendants Deutsche Bank National Trust Company as
Trustee for the Morgan Stanley Mortgage Loan Trust 2004-9,
Mortgage Pass-Through Certificates, Series 2004-9 (the "Trust")
and Mortgage Electronic Registration Systems, Inc. ("MERS" and,
together with the Trust, "Defendants") moved pursuant to Rules
12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure
("FRCP") to dismiss with prejudice the claims asserted against
them by Plaintiff, pro se, David Obal ("Obal" or "Plaintiff") in
his Verified Amended Complaint (the "AC") or, in the
alternative, to transfer the matter to the District Court for
the District of Nevada, pursuant to 28 U.S.C. § 1404(a). Based
on the conclusions set forth below, Defendants' motions are
granted and the AC is dismissed with prejudice.

**Prior Proceedings**

Obal filed his initial complaint on April 8, 2014 and
the AC on July 28, 2014. In the AC, Obal has named the
following defendants:

> The Trust; The Morgan Stanley Loan Trust 2004-9,
> Mortgage Pass-Through Certificates Series 2004-9, a
> "common law trust formed under the law of the state of

1

New York administered by Defendant Deutsche Bank
National Trust Company;" the Certificateholders of the
Morgan Stanley Loan Trust 2004-9, Mortgage Pass-
Through Certificates Series 2004-9; Morgan Stanley
Capital 1 Inc., which "is organized and maintains its
address at 1585 Broadway, New York, NY 10036;" MERS;
Certain "Roes" and "Does," including "unknown persons
who claim or have the right to claim an interest in
certain real property located in Henderson, Nevada"

See AC ¶¶ 20-30.


The AC sets forth the following allegations.  Certain

defendants "have unlawfully attempted transfers, assignments and

endorsements of the note and the deed of trust [on Plaintiff's

Property,] to which the Defendants [falsely] claim the

beneficial rights and interests."  Id.  Obal obtained the loan

on his property from Metrocities Mortgage, LLC ("Metrocities")

(the "Loan"), memorialized by a note (the "Note") and gave a

mortgage on his Property in Metrocities' favor (the "Mortgage").

Id. ¶ 50.  An assignment of the Note and Mortgage (the

"Assignment") to the Trust that was recorded in the Clark County

Recorder's Office in Nevada on March 27, 2012 is void; the

Assignment violated the Internal Revenue Code provisions, 26

U.S.C. 860A-860G, governing Real Estate Mortgage Investment

Conduits ("REMICs") such as the Trust (the "REMIC Tax

Regulations"), as it occurred more than three months after the

Trust's "Closing Date" of October 29, 2004 and the loan was in

default at the time of the Assignment.  Id. ¶¶ 4, 45, 53.  The

2

Assignment also did not comply with certain provisions of the Trust's Trust Agreement (also known as the Pooling Services Agreement or "PSA"). Id. ¶ 68. Under the New York Estates, Powers & Trusts Law (the "New York Trust Law") § 7.2-4, the Assignment was "in contravention of the trust" and was thus void. Id. ¶ 69. Notwithstanding the invalidity of the Assignment, Defendants have issued a notice of default on the loan and "have and will continue to attempt to collect mortgage payments on [the] loan and may attempt to commence foreclosure proceedings on behalf of an undisclosed principal." Id. ¶¶ 54, 81. The Assignment has prejudiced Obal's ability to negotiate a loan modification or short sale with the "true and correct beneficiary of [his] loan," his ability to obtain new financing, and his ability to provide a clear and correct title to a potential buyer of the Property. Id. ¶ 42. The invalid Assignment also "exposes him to multiple judgments and/or demands for payment on [his] loan." Id.

The AC alleges thirteen "counts" for declaratory relief phrased as questions challenging the validity of the Assignment. Obal seeks declarations that: his loan was in default at the time of the Assignment; the Assignment does not comply with certain REMIC Tax Regulations and provisions of the New York Trust Law, with certain provisions of the PSA, and with

documents the Trust recorded with the SEC, and is "void ab initio" and there is "no actual trust over [the Property];" and "Defendants do not have any legal cognizable rights as to Plaintiff's property, Plaintiff's Note, Plaintiff's Deed of Trust, or any other documents prepared by Defendants."

The AC also seeks "cancellation of instruments" (Fourteenth Cause of Action), claims "Fraud and Deceit" (Fifteenth Cause of Action), and claims violation of the New York General Business Law § 349 (Sixteenth Cause of Action), of the Nevada professional code (Seventeenth Cause of Action), of the Federal Debt Collection Practices Act (Eighteenth Cause of Action), and of the Truth in Lending Act (Nineteenth Cause of Action). The AC seeks general and special damages of not less than $1,000,000, punitive damages, restitution, and his attorneys' fees and costs of this litigation. Id. at Prayer for Relief. It also seeks an order enjoining "the Defendants from continuing to violate the statutes alleged" and from "pursuing further foreclosure proceedings against Plaintiff's property." Id.

The instant motions were marked fully submitted on October 15, 2014. Plaintiff, without Defendants' written

consent or this Court's leave, subsequently filed a Second
Amended Complaint that Defendants request be stricken pursuant.

**The Plaintiff Lacks Standing**

The Second Circuit recently affirmed the dismissal,
for lack of standing, of a complaint nearly identical to Obal's
seeking relief in regards to an allegedly invalid assignment of
a note and mortgage to a REMIC trust.  See Rajamin v. Deutsche
Bank Nat. Trust Co., 757 F.3d 79, 92 (2d Cir. June 30, 2014).
Like Obal, the plaintiffs in Rajamin claimed that the
assignments of the notes and mortgages on their property (in
connection with which foreclosure proceedings were underway)
were invalid because they violated the terms of the applicable
PSA and New York Trust Law.  See id. at 82, 89.  The Second
Circuit held that the plaintiffs lacked both constitutional and
prudential standing to assert their claims.  Id. at 86.

Obal lacks constitutional standing to assert his
claims because, like the injuries alleged in Rajamin, the
injuries he asserts are all "conjectural or hypothetical."  See
id. at 85 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555,
560 (1992)).  The "irreducible constitutional minimum of
standing" under Article III of the Constitution includes the

requirement that "the plaintiff must have suffered an injury in fact ... which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." Id. (internal citations and quotations omitted).

The Second Circuit has rejected as conjectural and hypothetical the same "injuries" Obal alleges. In Rajamin, the plaintiffs asserted that they "were suffering damages with each and every payment to Defendants," on the theory that defendants "were not proper parties to receive and collect such payments." Rajamin, 757 F.3d at 85. The AC here likewise alleges that the Trust is wrongfully collecting payment on the Note and Mortgage. AC ¶¶ 42, 81. The Second Circuit rejected this alleged injury, holding plaintiffs to their obligations to pay back the loan:

> [plaintiffs] took out the loans . . . and were obligated to repay them, with interest; and they have not pleaded or otherwise suggested that they ever paid defendants more than the amounts due, or that they ever received a bill or demand from any entity other than defendants. Thus, there is no allegation that plaintiffs have paid more than they owed or have been asked to do so.

Rajamin, 757 F.3d at 85.

The AC does not allege that Obal has been confronted with conflicting payment obligations, nor that he has paid more than he owed or was asked to do so. Obal's asserted injury that another entity may be the true owner of the loan, "exposing him

to multiple judgments and/or demands for payment." See AC ¶ 42.
The Second Circuit rejected this argument in Rajamin, finding
such a possibility "highly implausible, for that would mean that
. . . there was no billing or other collection effort by [the]
owner[] of [the] loan[]." Id. at 85.  "The suggestion that
plaintiffs were in imminent danger—or, indeed, any danger—of
having to make duplicate loan payments is thus entirely
hypothetical."  Id.

The AC's allegation that Defendants may commence a
foreclosure proceeding against him on behalf of an "undisclosed
principal" does not establish standing.  See AC ¶ 81.  The
Second Circuit rejected as conjectural the argument that some as
yet unknown entity may appear and assert an interest potentially
exposing the property owner to multiple inconsistent judgments.
Rajamin, 757 F.3d at 85.  The AC has not pled any facts showing
that his Property is in imminent risk of foreclosure.

The AC's allegation that uncertainty regarding the
true owner of the Note and Mortgage has prejudiced his ability
to negotiate a loan modification or short sale, and to convey
clear and correct title on the property to a potential buyer,
also fails to establish standing.  AC ¶ 42.  No facts, such as
details of discussions regarding a loan modification or sale of

the property, are alleged to support these alleged injuries.
Rajamin rejected a similar line of argument as too speculative
to support standing.  Id. at 85.


          In addition, Obal also lacks prudential standing
because he is attempting to pass off as his own claims that
could only be made by others.  The "prudential standing rule ...
normally bars litigants from asserting the rights or legal
interests of others in order to obtain relief from injury to
themselves."  Id. at 86.  The Second Circuit also rejected
claims by property owners for declaratory relief that an
assignment of a note and mortgage to a trust violated the
Trust's PSA, holding that property owners lacked prudential
standing to claim for violations of a PSA.  Id. at 87.  The
Second Circuit held that "plaintiffs lacked standing to enforce
the [PSAs] to which they were not parties and of which they were
not intended beneficiaries."  Id.  There is a distinction
between a claim based upon a violation of the note and mortgage
on the property, which the property owner may have standing to
bring, and a claim for a violation of the PSA governing the
trust, which the property owner lacks standing to bring).  Id.
The AC does not allege any violation of the Note and Mortgage.
The Mortgage states that Obal's loan "can be sold one or more
times without prior notice to [the b]orrower."  AC Ex. 2 § 20.

"[T]he notes and mortgages] to which [Obal was a] part[y] did
not confer upon [him] a right against nonparties to those
agreements to enforce obligations under separate agreements to
which [he was] not [a] part[y]." See Rajamin, 757 F.3d at 87.

Property holders also lack standing to assert claims
that assignments to a PSA violated the New York Trust law. Id.
at *87-88.  In Rajamin, as here, the plaintiffs asserted that
the note and mortgage assignments at issue were void under the
New York Trust Law because they were made "in contravention of
the trust." Id.; AC ¶ 69, Declaratory Relief Count 10.  The
Second Circuit rejected this claim for lack of prudential
standing on two basis.  First, such an argument "depends on
plaintiffs' contention that parties to the assignment agreements
violated the terms of the PSAs . . . while plaintiffs, as
nonparties to those contracts, lack standing to assert any
nonperformance of those contracts." Rajamin, 757 F.3d at 88.
Second, even if an action is taken in contravention of the trust
agreement, it is not void, but voidable "only at the instance of
a trust beneficiary or a person acting in his behalf." Id. at
90.  In the case of a REMIC trust such as the Trust, the
beneficiaries are the certificateholders, and not the property
owners whose note and mortgages were transferred to the Trust.
Id.  Obal is not a trust beneficiary, and therefore lacks

standing to seek a declaration under the New York Trust Law that
the Assignment is void.

Obal also lacks prudential standing to seek a
declaration that the Assignment violates REMIC Tax Regulations.
See AC Declaratory Relief Counts 2-8.  While no court in this
Circuit appears to have addressed the specific issue of whether
private plaintiffs have a right of action for violations of
REMIC Tax Regulations, courts in other jurisdictions have found
that there is no private right of action to enforce these IRC
provisions.  See, e.g., Kloss v. RBS Citizens, N.A., No. 13-
12833, 2014 WL 495408, at *8 (E.D.Mich. Feb. 6, 2014) ("[T]here
is no private right of action available to challenge any
perceived violation of 26 U.S.C. §§ 860A-G.") (internal citation
and quotation marks omitted)); Oliver v. Delta Fin. Liquidating
Trust, No. 6:12-cv-00869-AA, 2012 WL 3704954, at *2 n.8 (D.Or.
Aug. 27, 2012) (REMIC Tax Regulations "do[] not create a private
right of action but rather regulate[] the taxation of REMIC
trusts.").  These holdings are in line with this Circuit's
policy that it is for the IRS, and not private citizens, to
enforce the Internal Revenue Code.  See, e.g., Reynolds v. De
Silva, 09 Civ. 9218, 2010 WL 743510, at *7 (S.D.N.Y. Feb. 24,
2010) (holding that private citizens cannot enforce tax
regulations); Seabury v. City of N.Y., 06-CV-1477, 2006 WL

1367396, at *5 (E.D.N.Y. May 18, 2006) (same); <u>Palmatier v.</u>
<u>Lockheed Martin Corp.</u>, 13-CV-133, 2014 WL 1466489, at *4
(N.D.N.Y. Apr. 15, 2014) (same).  Obal has failed to establish a
private right of action to claim for violations of REMIC Tax
Regulations.


          SEC Rule 10b-5 provides the only private right of
action for securities litigation, and "the Supreme Court has
refused to imply private rights of action from any other
provision of the securities laws." <u>S.E.C. v. Cioffi</u>, 868
F.Supp.2d 65, 71 n. 4 (E.D.N.Y. 2012), <u>abrogated on other</u>
<u>grounds</u> by <u>S.E.C. v. Citigroup Global Markets, Inc.</u>, 752 F.3d
285, 294 (2d Cir. 2014).  The Supreme Court has "limited the
Rule 10b-5 private right of action to plaintiffs who were
themselves purchasers or sellers." <u>Merrill Lynch, Pierce,</u>
<u>Fenner & Smith Inc. v. Dabit</u>, 547 U.S. 71 (2006).  Obal also
makes an assertion that he is "a third party beneficiary
(whistleblower) pursuant to SEC laws and the Dodd Frank Whistle
Blower Program." AC ¶ 12.  The whistleblower provision of the
Dodd Frank Act does not provide a private right of action.
Rather, it only provides for monetary payments to
"whistleblowers who voluntarily provided original information to
the Commission that led to . . . successful enforcement." 15
U.S.C. § 78u-6(b)(1).

**The Declaratory Judgment Claims Are Dismissed**

This Court lacks subject matter jurisdiction to hear Obal's declaratory claims because he has failed to plead how his declaratory claims relate to an actual controversy, as required by Article III of the United States Constitution.  "[A]n actual controversy must be extant . . . at the time the complaint is filed [and] . . . throughout all stages of the litigation." Velvet Underground v. Andy Warhol Found. For the Visual Arts, Inc., 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (dismissing declaratory judgment complaint due to lack of actual controversy) (internal quotations omitted).  The Supreme Court's standard for whether an actual controversy exists to enable a court to take jurisdiction over the claim and issue declaratory relief is "whether the facts alleged . . . show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality . . . ." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).  The "declaratory relief sought [must] relate[] to a dispute where the alleged liability has already accrued or the threatened risk occurred" and cannot be based on a "feared legal consequence [that] remains a mere possibility, or even probability of some contingency that may or may not come to pass."  Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d

394, 407 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003).
In Dow Jones, the court dismissed the plaintiff's declaratory
judgment claim that a libel judgment rendered in London would
not be enforceable in New York, where the plaintiff's "claim[s]
of impending harm . . . [and] fears of enforcement of an adverse
judgment, [were] too abstract, remote and hypothetical to
constitute an actual controversy." Id. at 408-09.

     The recording of the Assignment after the PSA's
"Closing Date" does not establish a controversy between Obal and
the Trust.  As the Second Circuit held, "[t]he subsequent
recording of mortgage assignments does not imply that the
promissory notes and security interests had not been effectively
assigned under the PSAs." Rajamin, 757 F.3d at 91.  "The
assignment of a mortgage need not be recorded for the assignment
to be valid . . . [and] the [post-closing] recorded assignments
do not support plaintiffs' contention that their loans and
mortgages were not owned by defendants." Id.  The fact that the
recording date of the Assignment is March 27, 2012 does not
mean, as Obal asserts, that the note and mortgage on his
property were not transferred to the Trust prior to the PSA's
closing date.  See AC ¶ 41.  The "controversy" Obal asserts
stems from this core allegation.  As such, Obal has failed to
plead a controversy.

In addition, even assuming there is a real controversy about the significance of the recording date of the Assignment, Obal still has not asserted any real and immediate legal controversy between the Trust and himself for substantially the same reasons that he has not pleaded a concrete and imminent injury in fact to support standing for his claims. Obal has not held that the Trust is currently foreclosing on his property or taking any adverse legal action against him. Rather, he only asserts that the defendants "may" at some unspecified point in the future "attempt to commence foreclosure proceedings on behalf of an undisclosed principal." AC ¶ 81.

Obal's assertions that the Assignment has hampered his ability to negotiate a loan modification or short sale with the "true and correct beneficiary of [his] loan," his ability to obtain new financing, and his ability to provide a clear and correct title to a potential buyer of the Property, all amount to "naked assertions devoid of further factual enhancement" that this Court need not presume to be true. See AC ¶ 42; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). Obal does not provide any details to support these assertions or describe attempts to obtain a modification or short sale. This cannot be considered a "substantial

14

controversy" because a mortgage servicer is not required to issue a modification or grant a short sale.

Similarly, Obal's assertion that the Assignment could expose him to multiple judgments is devoid of any factual basis. See AC ¶ 42.

Finally, even had Obal presented an actual controversy within its jurisdiction, this Court declines to hear his declaratory judgment claims. "There is nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court to hear a declaratory judgment action." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) (internal quotation omitted). Rather, a court's review of declaratory judgment claims is discretionary, and "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial." Id.

The following factors are considered when determining whether to assume jurisdiction over a party's declaratory judgment claims: (1) whether the declaratory relief will resolve the controversy; (2) whether the declaratory relief will serve a useful purpose in clarifying the legal relations between the parties; (3) whether the party seeking declaratory relief was

engaging in forum shopping; (4) whether the issuance of declaratory relief will create conflict with another jurisdiction; and (5) whether a more appropriate form of relief exists.  See generally Dow Jones, 237 F.Supp.2d at 437-47.


The declaratory relief Obal seeks will not resolve the controversy he alleges exists or clarify the legal relations between the parties.  For example, a declaration that the Assignment is void will raise, not resolve, questions regarding who is then the proper owner and holder of the Note and Mortgage; what is to be done about payments received on the Note after the Assignment; and who has the authority to negotiate a loan modification or short sale with Obal.  See AC at Prayer for Relief.  The existence of the recording of the Assignment in the Clark County, Nevada, records will continue potentially to create the "confusion" Obal asserts as to ownership of the Note and Mortgage.  Moreover, there is no assertion of conflicting claims of ownership, or conflicting demands for payment and Obal alleges in the AC that he fears a potential foreclosure of the Property.  AC ¶81.  A declaration from this Court that the Assignment was improper and void as a preemptive strike against a possible non-judicial foreclosure on the Property could potentially create a conflict between this Court and a Nevada court.  Such a determination would be more properly made by a

16

Nevada court, if and when non-judicial foreclosure proceedings are commenced and Obal brings an action in response, raising the alleged invalidity of the assignment as a defense against foreclosure.  Under these circumstances, abstention is the better course.

On the face of the AC, there is no imminent threat to Obal's Property or contractual rights.  He can continue to reside at the Property, cure any default, and pay his mortgage.  In the alternative, if he does not cure any default and make his mortgage payments, non-judicial foreclosure proceedings will potentially be made on the Property, and he can then bring an action in Nevada and assert "any . . . defense . . . to acceleration and sale."  See AC Ex. 2 (Mortgage) § 22.  Both of these options are preferable to Obal seeking declaratory relief from this Court in relation to property located 2500 miles away.

Weighing the Dow Jones factors, jurisdiction over Obal's declaratory claims is declined.  The potential "injuries" Obal alleges he may suffer in the future are "too abstract, remote and hypothetical to constitute an actual controversy" sufficient to support this Court taking subject matter jurisdiction over Obal's declaratory claims.  See Dow Jones, 237 F. Supp. 2d at 408-09; Trust Mem. 11.

17

**The Remaining Claims Are Dismissed**

There is no cognizable legal basis for the claim
titled "Cancellation of Instruments."  See AC Fourteenth Cause
of Action.  The law of Nevada, where the Property is located,
does not recognize a cause of action for "cancellation of
instruments."  Banks v. Freddie Mac, 11-CV-00648, 2013 WL
1182685, at *5 (D. Nev. Mar. 20, 2013).  New York State law will
not be applied to determine the title to property located
outside the state.  See Posner v. Handelsman, 578 N.Y.S.2d 621,
622 (N.Y. App. Div. 1992) ("It is well settled that the courts
of one state may not decide issues directly affecting title to
real property located in another state.").

In addition, the AC has not pled that the transfer of
the Note and Mortgage occurred after the PSA's closing date.
The AC seeks to bar both the defendants in this action and
Metrocities from enforcing the note and mortgage.  See AC ¶ 181.
No justification for such relief has been presented.

The fraud claim is also inadequately pled.  See AC
Fifteenth Cause of Action.  The requirements for a fraud claim
under New York and Nevada law are essentially the same.  The

elements of such a claim are that the defendant: (1) made a
misrepresentation or omission of material fact; (2) which the
defendant knew to be false; (3) which the defendant made with
the intention of inducing reliance; (4) upon which the plaintiff
reasonably relied; and (5) which caused injury to the plaintiff.
See Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001);
Davenport v. Homecomings Fin., LLC, No. 56322, 2014 WL 1318964
at *2 (Nev. Mar. 31, 2014).  Further, under Rule 9(b) of the
Federal Rules of Civil Procedure, Obal must plead with
"particularity the circumstances constituting fraud."  The AC
does not describe in any detail what alleged misrepresentation
the Trust made and asserts only that "Defendants took
affirmative steps to conceal the true facts from [him]: namely
that no Defendant in this action has the right to foreclose."
AC ¶ 189.  There is no allegation to establish that defendants
knew it was invalid.  The AC asserts that Obal did not receive
notice of the assignment, nor has Obal described in any detail
any representations that the Trust made to Obal about the
assignment.  See AC ¶¶ 257-62.  This implies that the Trust made
no representations to him, false or otherwise.  As set forth
above, Obal has not pled any actual injury, much less an injury
resulting from misrepresentation.

The claim under New York Business Law § 349 is inadequately pled.  See AC Sixteenth Cause of Action.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."  See AC ¶¶ 2, 8, 58.  This Section applies only to deceptive acts in New York State, while Obal's claims are targeted at a mortgage assignment recorded in Nevada.  Also, the private right of action in this Section mirrors the right of the New York Attorney General to bring an action "in the name and on behalf of the people of the state of New York," demonstrating that the private right of action under this Section is intended for New York citizens, not a citizen of Nevada such as Obal.  See NY Gen. Bus. Law § 349 (b), (h).

In addition, to establish a cause of action under § 349 of New York's General Business Law, a plaintiff must demonstrate that: (1) the defendant's deceptive acts were directed at consumers; (2) the acts are materially misleading; and (3) injury resulted from the acts.  See Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995).  Section 349 "does not grant a private remedy for every improper or illegal business practice," and "cannot fairly be understood to mean that everyone who acts

20

unlawfully, and does not admit the transgression, is being 'deceptive,' within the meaning of that statute.  Rather, § 349 is limited to those practices which 'may tend, in [themselves], to deceive consumers." Schlessinger v. Valsapar Corp., 723 F.3d 396, 399 (2d Cir. 2013) (internal quotations and citations omitted).  "The focus of § 349 cases is whether the alleged deceptive practice was consumer oriented." Cohen v. Transp. Ins. Co., 10-cv-0743, 2011 WL 3650284, at *5 (N.D.N.Y. Aug. 18, 2011) (citation and quotation marks omitted)).  "A defendant will not be held liable under § 349 where the disputed private transaction does not have ramifications for the public at large."  Id. (internal quotations and citations omitted).

The AC also contains a claim for relief under the Nevada Deceptive Trade Practices Act (the "NDTPA").  See AC at Seventeenth Cause of Action.  The NDTPA applies to only a certain, defined set of deceptive practices.  See Nev. Rev. Stat. Ann. § 598.0915-925.  The majority of these practices apply to the sale of goods and telemarketing practices.  Id.; see also Davenport v. Homecomings Financial, LLC, No. 56322, 2014 WL 1318964, at *3 (Mar. 31, 2014 Nev.).  The only defined practice having applicability would be § 598.15, "[k]nowingly mak[ing] any ... false representation in a transaction." See id.  But Obal does not identify any knowing misrepresentations

21

made by the Trust.  Nor did any misrepresentation occur, since
the loan on Obal's property was properly transferred to the
Trust, regardless of the date of recording of the Assignment.

The AC also alleges that the Trust violated the
Federal Fair Debt Collection Practices Act ("FDCPA").  See AC at
Eighteenth Cause of Action.  To plead a FDCPA claim, a plaintiff
must show that (1) he has been the object of collection activity
arising from consumer debt; (2) the defendant is a "debt
collector" as defined by the FDCPA; and (3) the defendant has
engaged in an act of omission prohibited by the FDCPA.  See
Ogbon v. Beneficial Credit Servs., Inc., 10-CV-3760, 2011 WL
347222, at *4 (S.D.N.Y. Feb. 1, 2011); see also 15 U.S.C.
§ 1692.

First, the Assignment's recording after the closing
date of PSA does not establish that the Note and Mortgage were
not properly transferred to the Trust.  See Rajamin, 2014 WL
2922317, at *12.  Obal's FDCPA claim hinges on this allegation.
See AC ¶ 233 (the Trust "attempted to collect on the Note under
false pretenses, namely that the [Trust] was assigned
Plaintiff's debt when in fact [it was] not").

Additionally, the AC fails to describe any collection activities that the Trust, as opposed to the Loan's servicer, took.  There is no factual allegation sufficient to support this claim.  See Durandisse v. U.S. Auto Task Force, 06 Civ. 2463, 2009 WL 2337133, at *4 (S.D.N.Y. July 30, 2009) (dismissing FDCPA claim for insufficient evidence).

Further, "[t]he term [debt collector] does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).  The fact that the Assignment was recorded after the closing date of the PSA does not mean that the Loan was not assigned with the PSA.  While the AC has alleged that the loan was in default at the time of the recording, it makes no allegation that it was in default at the time of the PSA.  See AC ¶ 45.  The allegation that the Trust is a debt collector is therefore insufficiently pleaded.

The AC invokes the Truth in Lending Act ("TILA") as implemented by Regulation Z, 12 C.F.R. § 226.39.  AC Nineteenth Cause of Action.  Section 226.39 generally requires a lender who takes ownership of an existing loan, through sale, assignment or

other transfer, to notify the borrower within thirty days.  See 12 C.F.R. § 226.39.  Nevertheless, § 226.39 was not finalized until November 2009.  See 74 Fed. Reg. 60143 (interim final rule implementing Pub. L. No. 111-22 § 404 by enacting 12 C.F.R. § 226.39 with an effective date of Nov. 20, 2009).  The Mortgage loan at issue was transferred to the Trust in accordance with the PSA, which had a closing date of October 29, 2004.  AC ¶ 53. As the transfer of the loan pre-dated § 226.39 by five years, Obal cannot bring suit under this provision.  See Boniel v. U.S. Bank N.A., 12-CV-3809, 2013 WL 458298, at *5 (E.D.N.Y. Feb. 6, 2013) (granting summary judgment on TILA claim).

Moreover, the statute of limitations for causes of action brought under TILA and Regulation Z is one year from the date of the alleged violation.  See 15 U.S.C. § 1640(e).  As the loan transferred to the Trust on or before October 2004, Obal's time to bring a claim under TILA or § 226.39 expired by October 2005.  Even if the March 27, 2012 recording date of the Assignment was the date of transfer of ownership, that date is still two years prior to Obal's Complaint.  This claim is time-barred.  See Boniel, 2013 WL 458298, at *5.

The opposition to the motions does not deal with the authorities cited by the Defendants.  The claims for

cancellation of instruments (Claim 14), fraud (Claim 15), violations of New York General Business Law § 349 (Claim 16), violations of the NDTPA (Claim 17), violations of the FDCPA (Claim 18), violations of the TILA (Claim 19), and for injunctive relief (Prayer for Relief) have been abandoned and are unchallenged.  These claims are dismissed on that ground as well.  See McDonald v. Bd. Of Educ. of City of N.Y., 01 Civ. 1991, 2001 WL 840254, at *9 (S.D.N.Y. July 25, 2001) ("[B]ecause plaintiff failed to oppose defendants' motion to dismiss this claim, we presume she has abandoned it.  Therefore, it is dismissed."); Adams v. N.Y. State Educ. Dep't, 752 F. Supp. 2d 420, 426 (S.D.N.Y. 2010) ("[Plaintiffs' opposition] papers fail to address substantive grounds raised by [d]efendants' motions [to dismiss], thereby supporting a finding that the underlying claims have been abandoned."), aff'd sub nom. Ebewo v. Fairman, 460 F. App'x 67 (2d Cir. 2012).

**Conclusion**

        Based on the conclusion set forth above, Defendants' motions are granted, and the AC is dismissed with prejudice. The Plaintiff has already filed one amended complaint and has not dealt with controlling Second Circuit authority.  Additional pleading will not cure the lack of standing and injury.  This

25

conclusion is unaltered by the filed Second Amended Complaint.
Despite his pro se status, further leave to amend is denied.
See Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d
117, 127 (2d Cir. 2007) (declining to remand with leave to
replead where repleading would be futile); Cuoco v. Moritsugu,
222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [pro se
plaintiff's] causes of action is substantive; better pleading
will not cure it.  Repleading would thus be futile.  Such a
futile request to replead should be denied.") (citation
omitted).


          It is so ordered.


**New York, NY**
**February** / _3_ , **2015**

                              _Sweet_
                    _____
                         ROBERT W. SWEET
                             U.S.D.J.